UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**08 CIV 5641**

|  |  |
|---|---|
| ALICE LILLEGARD and ROBERT LILLEGARD, on Behalf of Themselves and All Others Similarly Situated, | Civil Action No. |
| Plaintiffs, vs. | CLASS ACTION |
| MAT FIVE LLC, CITIGROUP ALTERNATIVE INVESTMENTS LLC, CITIGROUP FIXED INCOME ALTERNATIVES, CITIGROUP GLOBAL MARKETS INC. and REAZ ISLAM, | COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS AND DELAWARE LAW |
| Defendants. | <u>DEMAND FOR JURY TRIAL</u> |



## NATURE OF THE ACTION

1.  Plaintiffs Alice and Robert Lillegard, on behalf of themselves and the class defined herein (the "Class"), based on information and belief and investigation of counsel, except for information within their personal knowledge, allege as follows:

2.  This is a class action on behalf of all persons or entities who purchased or otherwise acquired shares of the MAT Five LLC Fund ("MAT Five" or the "Fund") pursuant and/or traceable to a false and misleading Private Placement Memorandum (the "PPM") issued on or about December 18, 2006, and any supplements thereto (including presentation materials) (collectively, the "Selling Documents"), and who were damaged thereby. This action charges MAT Five, Citigroup Global Markets Inc. ("Citigroup Global"), Citigroup Alternative Investments LLC ("CAI") and Citigroup Fixed Income Alternatives ("CFIA") with violation of §12(a)(2) of the Securities Act of 1933 (the "1933 Act") and Delaware law.

3.  In summary, this action concerns the MAT Five Fund which was falsely advertised as an ideal and seemingly low-risk investment due to its composition of municipal bond opportunities involving the arbitrage of tax-exempt and taxable bonds. In reality, not only were the Fund's investments extremely risky, but ineffective risk management protocols were put in place by the Defendants. As a result, the Fund declined to less than 10% of its original value, to the detriment of the Plaintiffs.

## JURISDICTION AND VENUE

4.  The claims asserted herein arise under and pursuant to §12(a)(2) of the 1933 Act [15 U.S.C. §77l(a)(2)] and Delaware law. Jurisdiction is conferred by §22 of the 1933 Act and venue is proper pursuant to §22 of the 1933 Act. This Court has supplemental jurisdiction

under 28 U.S.C. §1367. Defendants used the instrumentalities of interstate commerce and the United States mails in connection with the acts complained of herein.

5. The MAT Five PPM specifically sets forth that matters shall be submitted to the jurisdiction of New York state or federal court. Furthermore, the violations of law complained of herein occurred in part in the District, including the dissemination of materially false and misleading statements complained of herein into this District. In addition, Citigroup Global, CAI and CFIA have operations located in the District.

## PARTIES

6. Plaintiff Alice Lillegard acquired shares pursuant to the PPM and Selling Documents and has been damaged thereby.

7. Plaintiff Robert Lillegard acquired shares pursuant to the PPM and the Selling Documents and has been damaged thereby.

8. Defendant MAT Five is a Delaware limited liability company that makes investments in interests issued by Municipal Opportunity Fund Five National ("MOF Five"), a Delaware limited liability company that is in the business of making leveraged investments in fixed-rate, tax- exempt municipal bonds.

9. Defendant Citigroup Global represents the corporate banking and capital markets arm of Citigroup Inc.'s ("Citigroup") broader Corporate and Investment Banking group. Citigroup Global provides advisory services regarding mergers and acquisitions, divestitures, and financing. It is also involved in the underwriting and trading of debt, equities, and derivatives. Citigroup Global acted as the Placement Agent for MAT Five. Citigroup Global is headquartered at 399 Park Avenue, New York, New York.

10. Defendant CAI acted as the Managing Agent for MAT Five and is an integrated alternative investments platform that manages a wide range of products across five asset classes, including private equity, hedge funds, real estate, fixed income and infrastructure. CAI manages capital on behalf of Citigroup, as well as third-party institutional and high net worth investors, and has headquarters located at 731 Lexington Avenue, 27th Floor, New York, New York.

11. Defendant CFIA assisted in the sale of MAT Five shares, helping to draft and disseminate the Selling Documents. It specializes in the identification, development and management of highly innovative, alternative fixed-income products.

12. Defendant Reaz Islam ("Islam") was the manager of the MAT Five fund during the relevant time period complained of herein.

## MUNICIPAL BOND ARBITRAGE BACKGROUND

13. During late 2006 and continuing into 2007, Citigroup, through CFIA and CAI, targeted many of its clients who were believed to be interested in fixed-income investments which would provide higher yields. One type of investment Citigroup promoted to its investors was municipal bond opportunities involving the arbitrage of tax-exempt and taxable bonds.

14. Municipal bond arbitrage involves building a leveraged portfolio of high-quality, tax-exempt municipal bonds and simultaneously hedging the duration risk in that municipal bond portfolio by shorting the equivalent taxable corporate bonds. Municipal arbitrage capitalizes on the fact that interest on municipal bonds is exempt from federal income tax. The arbitrage manifests itself in the form of a relatively cheap longer maturity municipal bond that yields significantly more than 65% of a corresponding taxable corporate bond. The

steeper slope of the municipal yield curve allows participants to collect more after-tax income from the municipal bond portfolio than is spent on the interest rate swap; the carry is greater than the hedge expense. Positive, tax-free carry can, *if properly managed*, reach into the double digits. The end goal is to limit this principal volatility, eliminating its relevance over time as the high, consistent, tax-free cash flow accumulates.

## SUBSTANTIVE ALLEGATIONS AGAINST DEFENDANTS

15. In December 2006, Defendants began marketing the "MOF Five Funds," now referred to as the "MAT Five Fund," a limited liability company, of up to $400 million in available shares. The Fund had a $500,000 minimum investment requirement and was promoted to investors as a means to produce stable cash flows in a tax-advantaged arbitrage opportunity.

16. In order to market the Fund, Defendants caused the Selling Documents to be disseminated beginning in 2006 in connection with the issuance of hundreds of millions of dollars of shares.

17. The MAT Five Fund was actually the fifth series of the same type of strategy, and new MAT Five investors were told that the prior four had all performed well and either met or exceeded targets. Investors were told that the prior four funds had net returns of 14% on a tax equivalent basis. All of these assurances were buttressed by an article by Defendant Islam (and published by CAI) in January 2007, entitled "New Horizons in Fixed Income Investing."

18. In the Selling Documents, Defendants particularly represented that:
- The MAT Five Fund would seek attractive tax-advantaged returns, with hedging strategies designed to manage fluctuations in Net Asset Value ("NAV").

- The selected instruments would be AAA/AA-rated municipal bonds, swaps, swaptions and treasuries.

- Each municipal bond at the time of purchase would be rated at least A3 by Moody's Investors Service ("Moody's) and AA by Standard & Poor's ("S&P").

19. Therefore, investors were given assurances that the bonds involved in the Fund would all be low-risk and investment grade.

20. The shares were sold with further assurances that they would return a 7%-8% yield, federal income tax free. Based on these assurances, the offering was so successful that new investors were told that the MAT Five offering would be oversubscribed.

21. The PPM and the Selling Documents went out of their way to stress the low risk of the investment and to highlight the risk management aspects of the strategy. For example, the Selling Documents stated that "CFIA investment strategies seek to provide attractive risk-adjusted returns across the efficient frontier . . ." and that the investment objective of the Fund was to "manage the interest rate risk by using proprietary hedging strategies."

22. The December 18, 2006 PPM further emphasized the low-risk investment by stating, for example:

> The Fund expects to achieve its goals through a *disciplined and experienced approach* to trading and a *rigorous risk management strategy* within the Investment Restriction and Guidelines.
>
> \*   \*   \*
>
> The Fund's portfolio will be marked to market on a daily basis. The Managing Agent or Sub-Agent will evaluate the appropriateness of each Underlying Municipal Bond on an ongoing basis. *Any perceived changes in credit quality, yield spread relative to the Municipal Market Data index or an Underlying Municipal Bond's relative value will cause the Managing Agent or Sub-Agent to re-evaluate the position.* The Fund intends to capitalize on opportunities occasionally by selling Underlying Municipal

Bonds that have appreciated against the Hedge Agreements and to liquidate positions perceived by the Managing Agent or Sub-Agent to add unreasonable risk to the Fund's portfolio. The Managing Agent or Sub-Agent will evaluate the Hedge Agreements that are in place for each Underlying Municipal Bond and adjust them based on, among other things, the structure of the particular Underlying Municipal bond, the current market environment and the Managing Agent's or Sub-Agent's view of the direction of the market. ***The capital loss parameters established with the Managing Agent, which the Managing Agent and each Sub-Agent intend to follow, may limit the Managing Agent's and each Sub- Agent's choice of new or replacement Hedge Agreements or Synthetic Agreements, and may reduce the economic benefit of a particular hedge by comparison to a hedge not subject to such parameters.***

23. These statements were false and misleading because, in reality, Defendants failed to take a disciplined approach to search for larger gains. This inaction ultimately lead to extreme risks and the loss of most of Class members' investment in MAT Five.

24. The Selling Documents also stressed the risk oversight for the MAT Five Fund by stating that CFIA had a "strong record of performance" and by touting the abilities of CFIA and CAI to minimize risk:

- **Experienced Management, Oversight and Investor Support:** CFIA a business unit of Citigroup Alternative Investments ("CAI"), is the Managing Agent responsible for portfolio management and risk oversight. As of 11/30/2006, CFIA manages over $4.3bn of capital and $23.9bn of leveraged assets and has a strong track record of performance. CFIA will provide quarterly reporting for the Fund.

- CFIA is a Leading Global Provider of Fixed Income Alternative Strategies

- AUMs of $130 billion+ (Capital of $45 billion)

- Citigroup Proprietary Capital of $10 billion

- 875+ Professionals across 14 Investment Centers

25. Therefore, the PPM and the Selling Documents served to give the impression to investors that the Fund was an "ideal investment for conservative retirees" because it was low-risk and well managed.

26.     The Selling Documents were false and misleading in that the strategy to be employed would not protect investors as suggested by the ratings of the underlying investments. The PPM itself was false and misleading in that it stressed nonexistent risk management protocols.

27.     In fact, despite all of the above assurances, Defendants did not have appropriate risk management practices in place to prevent employees of CAI from engaging in highly risky investment practices. Furthermore, investments made by the Fund were actually extremely risky as they could drop precipitously if the markets changed, or if the investments were not properly managed (which they were not).

28.     Defendants made the false and misleading representations with the knowledge that the MAT Five Fund was going to implement high- risk strategies.

29.     As a result of these risky strategies, Plaintiffs and the Class have suffered by receiving no further distributions and by the precipitous loss in value of their shares.

30.     Besides the initial PPM and the Selling Documents, Defendants made further false and misleading statements in their quarterly reports in regards to the Fund's performance and basic viability. For example, in or about April 2007, Defendants disseminated MAT Five's quarterly report as of March 31, 2007, which stated in part:

> MAT Five National Portfolio (the "Fund") completed its first capital raise and began operations on February 14, 2007. Thus far, the markets have presented *rather favorable investment opportunities for the Fund's initial ramp-up of the municipal arbitrage strategy and for purchasing short-term cash collateral. New municipal supply has been running ahead of our initial expectations*, with $106 billion issued during the first 3 months of 2007, a 53% increase over last year's near record levels. Given this magnitude of supply, investor demand began to wane near the end of the period. As a result, longer-term municipal yields moved slightly higher (cheaper) vs. Treasuries, which increased Long Ratios* and created buying opportunities for the Fund. We took advantage of these attractive buying opportunities, and as of March 31, 2007, the Fund was approximately 1.8 times leveraged.

> Subsequent to quarter-end, as of April 27, 2007, the Fund's leverage increased to 2.8 times. Once fully ramped-up, we continue to target a leverage range of 7-9 times, which we hope to have completed within 12-14 months of the initial closing, possibly sooner if market conditions continue to cooperate.
>
> Looking ahead, *we are optimistic about the investment opportunities, and continued ramp-up of the Fund.* We believe that municipal bond issuance is likely to remain heavy for the next couple of months, *with the possibility that 2007 full year supply may surpass the record $408 billion set in 2005.* The heavy issuance volume is likely to keep municipals attractive vs. Treasuries and aide the continued ramp-up of the Fund. In addition, we expect that in mid-to-late 2007, the Fed is likely to cut rates, **which we believe could cause the yield curve to further steepen and create additional relative value opportunities.** In summary, we are satisfied with the Fund's ramp-up thus far, and our outlook for the near term remains quite optimistic. We will provide you a more detailed summary in our next quarter report as of June 30, 2007.

(Footnote omitted.)

31. Similarly, in or about July 2007, Defendants disseminated MAT Five's quarterly report as of June 30, 2007, which stated in part:

> For the quarter ended 6/30/07, the MAT Five National Portfolio (the "Fund") continued to ramp up the initial capital investment while posting a slight negative total return as income generation was offset by a decline in NAV that resulted from municipals generally underperforming relative to taxables, as more fully described below. Under what we believe were relatively attractive market conditions, the Fund continued to deploy capital into the municipal arbitrage strategy and began to generate higher levels of tax-exempt income. On 7/16/07, the Fund made its first distribution to investors equal to approximately 1% of the initial investment. Going forward, **the Fund anticipates making regular quarterly distributions** with the next distribution expected on 10/15/07.
>
> \* \* \*
>
> Looking ahead, **we are optimistic that issuance volume could remain heavy and aide in the continued ramp-up of the Fund.** In addition, economic uncertainty and concerns of a potential sub-prime contagion could keep bond market volatility elevated, cause the yield curve to steepen further and create relative value and income opportunities for the Fund. In summary, we are pleased with the Fund's ramp-up thus far, and our outlook for the near term remains optimistic. Please see below for the details of your specific series. We will provide you a more detailed summary in our next quarterly report as of September 30, 2007.

32. These statements were false and misleading because, in reality, the Fund was performing quite poorly with a *negative* return.

## THE TRUTH EMERGES

33. Beginning in the fall of 2007, the truth about the poor performance of the Fund began to leak out. This poor performance (including a negative year-to-date return of 9.15%) was known as of the issuance of MAT Five's quarterly report for the quarter ended September 30, 2007. However, the report continued to assure investors that the fund had taken advantage of market volatility:

> Overall during the period, municipals underperformed vs. Treasuries and the Fund posted a total return of −7.85%. Subsequent to quarter end and through 10/18/07, Fund returns have increased by approximately 3.5%. Over the next 3-6 months, we believe longer-term muni-to-Treasury yield relationships will continue to decline towards more historical levels as the bond markets revert back towards normal levels. The Fund looked to benefit from this period of volatility by adding positions at what we believe were very attractive levels, as it continued to ramp up the initial capital investment (leverage increased to 6.8x from 4.7x – with target of approx. 8x). It is important to note *that periodic fluctuations in NAV do not materially impact the Fund's ability to generate income, and on 10/15/07, the Fund made its second distribution to investors equal to approximately 1.75% of their initial investments. Going forward, the Fund anticipates making regular quarterly distributions with the next distribution expected on 1/15/08.*

34. Defendants' assurances were, however, entirely false and misleading; within only a few months, the Fund reported *a net total return of -17.08%.*

35. The quarterly report as of December 31, 2007 further disclosed that leverage had increased substantially in the December 2007 quarter:

> The Fund's investment and hedging strategies are long-term in nature and seek to capture an income spread while also attempting to mitigate the longer-term impact of interest rate fluctuation on NAV; they do not fully eliminate the interim volatility between shorter-term movements in Treasury rates because municipal rates typically lag. Over the quarter, the Fund increased leverage from 6.9x to 8.6x.

36. Given these revelations, investors, who had invested heavily in the Fund based upon the assurances of low-risk, grew concerned and communicated with the Defendants who, despite the financial realities, continued to assure investors about the viability of the Fund. Defendants or their agents communicated with many investors explaining that the issue was the yield relationship between municipal bonds and treasuries, and that the flight to credit quality had caused treasury yields to be unusually low. However, investors were assured that more money had been put to work during this unusual time and prices were already recovering, which would lead to better results in the future.

37. However, these false assurances belied the reality. On March 20, 2008, CAI wrote a letter to investors which stated in part:

> Dear Municipal Opportunity Fund Five National (MOF Five National – doing business as ASTA/MAT Five National) Investor:
>
> As many of you are aware, over the past few months the global bond markets have been experiencing a reduction in the availability of credit and market liquidity. During the past few weeks, this credit crunch has rapidly accelerated and spread into the municipal bond markets. As a result, the cash positions and net asset values of the ASTA/MAT municipal arbitrage fund portfolios, which include MOF Five National, have been severely impacted. It is in this light that Citi committed $1 billion of equity to the ASTA/MAT platform in early March 2008. Citi intends for this equity capital to assist in preserving fund value for existing investors by permitting the fund to make margin calls and continue to operate during this very stressful liquidity period. Of the $1 billion committed by Citi, as of today, $661 million has been invested across the ASTA/MAT funds, including in MOF Five National. The terms and conditions of Citi's investment into these funds have not yet been finalized, but we expect to do so shortly and will communicate with you at that time.
>
> Because of MOF Five National's low cash position and the ongoing dislocations in the credit markets, Citigroup Alternative Investments LLC ("CAI"), as investment manager, believes that it is advisable and in the best overall interests of investors ***to indefinitely suspend the fund's income distributions in an effort to preserve liquidity.*** The income received from the securities in MOF Five National will accrue to the overall fund value. It is important to note that CAI is taking this action across all of its ASTA/MAT fund portfolios, and will continue to look for opportunities to

sell assets, increase liquidity and reduce leverage to allow the funds to move toward a more defensive position. In addition, in those ASTA/MAT funds where investor lock-up periods have expired CAI has informed investors *that it is delaying redemptions of shares (and payments of related redemption proceeds) in an effort to preserve liquidity.* CAI expects to re-evaluate these decisions at the conclusion of the second quarter 2008, in the light of credit and other market conditions prevailing at the time.

38. As of that time, the Fund had declined to less than 10% of its original value and no further distributions were made to the Plaintiffs.

39. In May, 2008, Defendant Islam resigned from his position at Citigroup.

40. Defendants did, however, receive substantial fees for their participation in the selling and management of MAT Five. CAI, as Managing Agent, received a base management fee of 0.35% (0.38% for the New York portfolio and the California portfolio) of the par amount of the underlying municipal bonds plus the notional value of any swaps. There was a 1% placement fee charged to investors.

41. While investors have lost most of their investment, Citigroup made 44% on its investment in the MAT Five Fund during March 2008 alone.

42. Plaintiffs have been harmed due to the improper assurances made about the shares and the cessation of distributions and the decline in value of the shares.

### DEFENDANTS' FIDUCIARY DUTIES

43. As managers of a Delaware Limited Liability Company, Defendants CAI, CFIA and Islam have an affirmative fiduciary obligation to refrain from self-dealing and act in the best interests of MAT Five's members to preserve the assets of the fund. To diligently comply with these duties, the managers may not take any action that:

    a. adversely affects the value of the assets of the fund and the return provided to MAT Five's members;

        b.        contractually prohibits them from complying with their fiduciary duties;

        c.        otherwise adversely affects their duty to monitor, supervise and direct the investments of MAT Five for the Fund's members; and/or

        d.        provides the managers with preferential treatment at the expense of, or separate from, MAT Five's members.

44.    In accordance with their duties of loyalty and good faith, the Defendants, as managers of MAT Five, are obligated to refrain from:

        a.        participating in any transaction where the manager's loyalties are divided;

        b.        participating in any transaction where the managers are entitled to receive a personal financial benefit not equally shared by the members of MAT Five; and/or

        c.        unjustly enriching themselves at the expense or to the detriment of the members.

45.    Plaintiffs allege herein that defendants CAI, CFIA and Islam, separately and together, and aided and abetted by the other Defendants, violated their fiduciary duties owed to Plaintiffs and the other members of MAT Five in connection with their operation of MAT Five and the investments by Citigroup in the fund, including their duties of loyalty, good faith, candor, due care and independence, insofar as they were at least grossly negligent in their management of the MAT Five Fund's assets, engaged in self-dealing and/or obtained for themselves personal benefits, including personal financial benefits, not shared equally by Plaintiffs or the Class, and/or aided and abetted therein. As a result of the Defendants' gross

negligence, self-dealing and divided loyalties, neither Plaintiffs nor the Class will receive adequate or fair value for their shares in MAT Five.

## CLASS ACTION ALLEGATIONS

46. Plaintiffs bring this action as a class action on behalf of a class consisting of all persons or entities who acquired the shares of MAT Five pursuant and/or traceable to the false and misleading PPM on or about December 18, 2006 and/or any supplements thereto and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

47. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are dozens of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Citigroup Global or its transfer agents and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

48. Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected, although to different degrees, by Defendants' wrongful conduct in the violation of federal law that is complained of herein.

49. Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

50. Common questions of law and fact exist as to all members of the Class and

predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are: whether Defendants violated the 1933 Act; whether the PPM and Selling Documents issued by Defendants to investors omitted and/or misrepresented material facts about the structure of the investments in municipal bonds and the attendant risks; whether Defendants breached their fiduciary duties under Delaware law; and to what extent the members of the Class have sustained damages and the proper measure of damages.

51.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## CLAIM I

### For Violation of §12(a)(2) of the 1933 Act
### Against All Defendants

52.   Plaintiffs repeat and reallege the allegations set forth above as if set forth fully herein. For purposes of this Count, Plaintiffs expressly exclude and disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the 1933 Act.

53.   By means of the defective PPM which operated as a prospectus, Defendants aggressively promoted the sale of MAT Five shares to Plaintiffs and other members of the Class.

54.   Defendants prepared and caused to be filed the PPM, using Citigroup Global as the Placement Agent. The PPM stated in part:

> The investment objective of the Fund is to generate attractive after-tax returns through investments in limited liability company interests (the "Underlying Shares") issued by Municipal Opportunity Fund Five LLC, a Delaware limited liability company ("MOF Five"), a fund that makes economically leveraged investments in fixed-rate, tax-exempt municipal bonds. MOF Five will seek to mitigate the accompanying interest rate risks through proprietary hedging strategies as described in Annex I.

55. The PPM included numerous risk factors, one of which involved the effect of rising interest rates:

> The market value of municipal bonds, like that of other fixed-income investments, generally declines as prevailing interest rates increase. Similar market value fluctuations may occur with Eligible Investments. In addition, their market value is dependent on the credit of the issuer of such bonds. Because the value of Residual Certificates is directly tied to the value of the Underlying Municipal Bonds, a decrease in the market value of those municipal bonds would cause a decrease in the value of the Residual Certificates. Such decreases could lead to a decline in the Fund's Net Asset Value and could cause material losses to investors in the Fund.

56. This implied that declining interest rates would cause an increase in market value of the shares.

57. The PPM contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above.

58. Defendants owed Plaintiffs and the other members of the Class the duty to make a reasonable and diligent investigation of the statements contained in the PPM to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.

59. Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the PPM as set forth above.

60. Plaintiffs did not know, nor in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the PPM at the time they acquired their

MAT Five shares.

61. By reason of the conduct alleged herein, Defendants violated §12(a)(2) of the 1933 Act. As a direct and proximate result of such violations, Plaintiffs and the other members of the Class who purchased MAT Five Fund shares pursuant to the PPM sustained substantial damages in connection with their purchases of these shares. Accordingly, Plaintiffs and the other members of the Class who hold such shares have the right to rescind and recover the consideration paid for their shares, and hereby tender their shares to the defendants sued herein. Class members who have sold their shares seek damages to the extent permitted by law.

## CLAIM II

### Claim for Breach of Fiduciary Duties and/or Aiding and Abetting Breach of Fiduciary Duty Under Delaware Law Against All Defendants

62. Plaintiffs incorporate ¶¶1-60 by reference.

63. Defendants have violated the fiduciary duties of care, loyalty, candor, good faith and independence owed to the members of MAT Five and have acted to put their personal interests ahead of the interests of MAT Five's members, and/or have aided and abetted therein.

64. By the acts, transactions and course of conduct alleged herein, Defendants CAI and Islam, aided and abetted by the remaining Defendants, failed to exercise the care required, and breached their duties of loyalty, good faith, candor and independence owed to the members of the MAT Five Fund by:

    a. failing to properly preserve the assets of the MAT Five Fund;

    b. failing to manage the risks associated with the MAT Five Fund; and

   c. ignoring or not protecting against the numerous conflicts of interest resulting from the managers' own interrelationships or connection with Citigroup's investment in the MAT Five Fund.

  65. By reason of the foregoing acts, practices and course of conduct, Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Plaintiffs and the other members of the Class, and/or have aided and abetted therein.

  66. As a result of the actions of Defendants, Plaintiffs and the Class have been and will be irreparably harmed in that they have not and will not receive their fair portion of the value of the MAT Five fund's assets and have been and will be prevented from obtaining a fair price for their shares.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

  A. Determining that this action is a proper class action and certifying Plaintiffs as Class representatives;

  B. Awarding compensatory damages in favor of Plaintiffs and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

  C. Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

  D. Awarding rescission or a rescissory measure of damages; and

  E. Awarding such additional equitable/injunctive or other relief as deemed appropriate by the Court.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

DATED: June 23, 2008

SCOTT + SCOTT, LLP

*/s/ Beth A. Kaswan*

BETH A. KASWAN (BK 0264)
29 West 57th Street
New York, NY 10019
Telephone: 212.223.6444
212.223.6334 (fax)

SCOTT + SCOTT, LLP
CHRISTOPHER M. BURKE
KRISTEN M. ANDERSON
600 B Street, Suite 1500
San Diego, CA 92101
Telephone: 619.233.4565
619.233.0508 (fax)

SCOTT + SCOTT, LLP
DAVID R. SCOTT
AMANDA LAWRENCE
108 Norwich Avenue
P.O. Box 192
Colchester, CT 06415
Telephone: 860.537.5537
860.537.4432 (fax)

SCOTT + SCOTT, LLP
WALTER W. NOSS
12434 Cedar Road, Suite 12
Cleveland Heights, OH 44106
Telephone: 216.229.6088
216.229.6092 (fax)

Attorneys for Plaintiff

# PLAINTIFF CERTIFICATION
## PURSUANT TO FEDERAL SECURITIES LAWS

Alice Lillegard and Robert Lillegard, ("Plaintiffs"), declare, as to the claims asserted under the federal securities laws, that:

1. Plaintiffs have reviewed the Complaint and retain Scott + Scott LLP, and such co-counsel it deems appropriate to associate with, to pursue such action on a contingent fee basis.

2. Plaintiffs did not purchase the security that is the subject of this action at the direction of Plaintiffs' counsel, or in order to participate in any action.

3. Plaintiffs are willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiffs' transaction in the MAT FIVE security that is the subject of this action during the Class Period is as follows:

| No of Shares/Securities | Buy/Sell | Date | Price Per Share |
|---|---|---|---|
| 1 | Buy | 2/14/2007 | $500,000 |

5. During the three years prior to the date of this Certification, Plaintiffs have not served, or sought to serve as a class representative in a federal securities fraud case, except as follows:
   None

6. Plaintiffs will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiffs' pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

We declare under penalty of perjury that the foregoing is true and correct. Executed this 17 day of June, 2008, at Madison, Wisconsin.

Printed Name: Alice Lillegard

Signature: *Alice Lillegard*

Printed Name: Robert Lillegard

Signature: *Robert Lillegard*

Address:    333 West Mifflin Street, #9010

City/State:  Madison, WI 53703

Telephone:  608/442-1260

Email:      alicelillegard@yahoo.com